T.C. Memo. 2016-164

UNITED STATES TAX COURT

JOSEPH N. HUNTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16465-14.                    Filed August 25, 2016.

Joseph N. Hunter, pro se.

<u>Susan K. Bollman</u> and <u>Denise A. Diloreto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Petitioner seeks review of respondent's determination

denying his request for relief from joint and several liability under section

6015(b), (c), and (f).[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** The only issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for an understatement of tax for the 2011 taxable year. We hold that he is not entitled to such relief.

FINDINGS OF FACT

Petitioner resided in West Virginia at the time the petition was filed with the Court.

Petitioner and Shannon Hunter married in 1994, and they remained married in 2011. From their marriage until their separation in November 2011[2] petitioner's employment with various companies and his real estate rental business were the sole sources of income for the family; Mrs. Hunter was a stay-at-home mother to their four children.

In 2007 petitioner was working as a mechanic for a transportation company when he was forced to leave his job after suffering a workplace injury. As a result of the injury he applied for and was awarded Social Security disability benefits. In 2011 he received a lump-sum payment of $43,657 for Social Security disability benefits.

_____

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner and Mrs. Hunter ultimately divorced in December 2012.

**[\*3]**  During the marriage Mrs. Hunter handled the family's financial affairs, including preparing, or having prepared by a tax professional, their Federal income tax returns.  For 2011 and each year before that during their marriage, Mrs. Hunter filed joint Federal income tax returns for herself and petitioner; petitioner was never involved in their preparation or filing, and for many of the years, including 2011, Mrs. Hunter signed petitioner's name to the returns without his having reviewed them.  To that end, with respect to the 2011 taxable year, Mrs. Hunter timely filed a joint Federal income tax return (joint return) on October 11, 2012, reflecting a tax refund of $4,688.

On July 8, 2013, respondent issued a joint notice of deficiency to petitioner and Mrs. Hunter for the 2011 taxable year, determining a deficiency in their Federal income tax of $4,364 and an accuracy-related penalty pursuant to section 6662(a) of $1,673.  The notice of deficiency was based on their failure to properly report the lump-sum payment to petitioner of Social Security disability benefits as well as their failure to report certain interest income from Huntington National Bank and rental income from Charleston-Kanawha Housing Authority.  Neither petitioner nor Mrs. Hunter filed a petition with this Court in response to the notice of deficiency.

[*4]   In August 2013 petitioner filed a Form 8857, Request for Innocent Spouse Relief.  In his request petitioner represented that he did not know Mrs. Hunter had filed a joint Federal income tax return with respect to the 2011 taxable year and that before preparing the return she had withdrawn all the money from their bank account without his knowledge.  However, at trial petitioner acknowledged that he did not file a separate return for 2011 and that a December 26, 2012, order of the Family Court of Kanawha County, West Virginia, dissolving petitioner and Mrs. Hunter's marriage, recites that he and Mrs. Hunter came before that court on October 9, 2012, two days before the filing of the joint return, having reached an agreement concerning the parenting and property issues, including agreeing to file a joint Federal income tax return for 2011.

On October 7, 2013, respondent sent petitioner and Mrs. Hunter a notice of balance due for the 2011 taxable year of $3,936.  On October 29, 2013, Mrs. Hunter alone sent back a response, disagreeing with respondent's computations and providing her own computation of the 2011 tax liability.  She also attached a Form 9465, Installment Agreement Request, stating that as part of the divorce she had received the entire 2011 tax refund and that she would take full responsibility for the amount owed for 2011 given that she had filed the return for that year.

**[*5]** Mrs. Hunter requested that her 2013 tax refund be applied toward the liability and that she be allowed to pay $25 monthly to satisfy the balance.

On November 25, 2013, on the basis of Mrs. Hunter's response to the previous notice of balance due, respondent sent petitioner and Mrs. Hunter another notice of balance due which reflected a reduced 2011 liability of $1,576, attributable to unreported taxable Social Security income of $7,997 as a result of petitioner's having received during 2011 Social Security disability benefits of $43,657 and unreported interest income of $14 from Huntington National Bank. Only Mrs. Hunter again sent back a response, this time agreeing with respondent's computations. She also again attached a Form 9465, requesting to pay the reduced 2011 liability in monthly payments of $25. According to respondent's certified account transcript for petitioner and Mrs. Hunter's 2011 taxable year, one payment of $25 was made on December 17, 2013.

On May 8, 2014, respondent's Office of Appeals issued a final determination to petitioner denying relief from joint and several liability under section 6015(b), (c), and (f) because "relief is not allowed on tax you owe on your own income." On July 7, 2014, petitioner timely filed a petition with this Court seeking review of respondent's determination. Despite being given notice

**[*6]** of the filing of the petition, Mrs. Hunter did not intervene pursuant to section 6015(e)(4) and Rule 325.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a). Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

In this case, respondent evaluated petitioner's entitlement to relief from joint and several liability under each alternative, and we have jurisdiction to do the same. See sec. 6015(e)(1). In doing so, we apply a de novo standard of review, as well as a de novo scope of review. Porter v. Commissioner, 132 T.C. 203, 210 (2009). Petitioner bears the burden of proving that he is entitled to relief under

[*7] section 6015.  See Rule 142(a); Porter v. Commissioner, 132 T.C. at 210; Alt

v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir.

2004); Stergios v. Commissioner, T.C. Memo. 2009-15.

A.     Valid Joint Return

We first address whether petitioner and Mrs. Hunter made a valid joint

Federal income tax return for 2011 because in his request for relief from joint and

several liability and at trial, petitioner asserted that not only had he not signed the

joint return but that he was completely unaware Mrs. Hunter had even filed jointly

for 2011.  Whether an income tax return is a joint return or a separate return of the

other spouse is a question of fact.  Harrington v. Commissioner, T.C. Memo.

2012-285, at *8 (citing Heim v. Commissioner, 27 T.C. 270 (1956), aff'd, 251

F.2d 44 (8th Cir. 1958)) (involving an electronically filed return).  The

determinative factor in deciding whether a filed return qualifies as a joint return is

whether a husband and wife intended to file a joint return.  Ziegler v.

Commissioner, T.C. Memo. 2003-282, slip op. at 8 n.4 (citing Stone v.

Commissioner, 22 T.C. 893 (1954)).  Intent is determined as of the time the return

was filed.  Parker v. Commissioner, T.C. Memo. 1978-23.  In evaluating intent,

this Court has considered whether the nonsigning spouse filed a separate return,

whether the nonsigning spouse objected to the joint filing, and whether the filing

[*8] history indicates an intent to file jointly.  Harrington v. Commissioner, T.C. Memo. 2012-285.

In this case, petitioner presented no evidence whatsoever to corroborate his assertions regarding the joint return and, thus, they are, standing alone, unpersuasive.  See, e.g., Shea v. Commissioner, 112 T.C. 183 189 (1999) ("As we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony.").  Indeed, petitioner's manifested intent shows otherwise.  Petitioner acknowledged at trial that he and Mrs. Hunter had come before the Family Court of Kanawha County, West Virginia, on October 9, 2012, having previously reached an agreement with respect to, among other things, property issues, including the filing of the joint Federal income tax return for 2011.  On the basis of this acknowledgment, it is clear that petitioner had already agreed to file jointly with Mrs. Hunter when the joint return was timely filed on October 11, 2012.  Petitioner also admitted that he and Mrs. Hunter had always filed joint Federal income tax returns and that he never made any attempt to file a separate Federal income tax return for 2011 despite having received $43,657 in Social Security disability benefits during that

[*9] year.[3]  Accordingly, these facts support a finding that petitioner and Mrs.

Hunter made a valid joint Federal income tax return for 2011.

B.    Relief Under Section 6015(b)

In order to be entitled to relief under section 6015(b), the spouse who

requests that relief (requesting spouse) must satisfy the following conditions:  (1) a

joint return has been made for a taxable year; (2) on such return there is an

understatement of tax attributable to erroneous items of the nonrequesting spouse;

(3) the requesting spouse did not know and had no reason to know of the

understatement at the time the return was signed; (4) taking into account all facts

---

[3]Sec. 6012(a)(1) requires every individual whose taxable gross income equals or exceeds the exemption amount to file a return.  For 2011 the exemption amount was $3,700.  Petitioner and Mrs. Hunter separated in November 2011. The taxability of Social Security benefits is calculated pursuant to a formula set forth in sec. 86.  See McAdams v. Commissioner, 118 T.C. 373, 375-376 (2002). Under sec. 86, if a taxpayer's "modified adjusted gross income", plus one half of the Social Security benefits received during the taxable year, exceeds the "base amount", then a portion of the Social Security benefits received must be included in the taxpayer's gross income.  See sec. 86(a), (b), and (c).  Pursuant to sec. 86(c)(1), since petitioner was married and resided with Mrs. Hunter during part of 2011, petitioner's taxable Social Security benefits if a joint Federal income tax return is not filed are calculated by using the amount by which the benefits combined with certain other income exceed a base amount of zero rather than $32,000 if a joint Federal income tax return is filed.  During 2011 petitioner was paid $43,657 in Social Security disability benefits.  Regardless of which formula as set forth in sec. 86 is used, petitioner's taxable Social Security income exceeded the $3,700 exemption amount and, therefore, he was required to file a return for 2011.

**[*10]** and circumstances, it is inequitable to hold the requesting spouse liable for that year's deficiency in tax attributable to such understatement; and (5) the requesting spouse timely elects relief under section 6015(b).  Sec. 6015(b)(1). These conditions are stated in the conjunctive and, thus, a failure to meet any one of them precludes the requesting spouse from being entitled to relief under section 6015(b).  Alt v. Commissioner, 119 T.C. at 311; McClelland v. Commissioner, T.C. Memo. 2005-121, slip op. at 9.

As discussed supra, petitioner and Mrs. Hunter made a joint return for the 2011 taxable year.  And there is no dispute that petitioner timely filed a request for relief.  However, petitioner plainly cannot satisfy the second condition under section 6015(b).  This condition requires the requesting spouse to show that the understatement of tax is attributable to erroneous items of the other spouse.  Sec. 6015(b)(1)(B).  An "erroneous item" is "any item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported (including improperly characterized) on an individual income tax return." Sec. 1.6015-1(h)(4), Income Tax Regs.  Furthermore, an erroneous item is generally attributed to the individual whose activities gave rise to the item.  See id. para. (f)(1); see also Agudelo v. Commissioner, T.C. Memo. 2015-124, at *14;

**[*11]** Work v. Commissioner, T.C. Memo. 2014-190, at *12; sec. 1.6015-3(d)(2)(iii), Income Tax Regs.

Here, the understatement of tax was attributable to erroneous items of petitioner, namely, his underreported Social Security disability income.[4] Because petitioner has failed to satisfy the second condition under section 6015(b), we need not decide whether he satisfied the other two conditions under section 6015(b), i.e., whether he lacked the requisite knowledge of the understatement and whether equity considerations favor him. Consequently, petitioner is not entitled to relief under section 6015(b).

C.   Relief Under Section 6015(c)

Subject to other conditions, section 6015(c) allows a divorced or separated spouse to elect to limit his or her liability for a deficiency assessed with respect to a joint return to the portion of such deficiency allocable to him or her under subsection (d). Pursuant to section 6015(d)(3)(A), "any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." Further, "[e]rroneous items of income are allocated

---

[4]Petitioner did not address in his petition and at trial whether the nominal amount of unreported interest income was not attributable to him. As a result we deem petitioner to have conceded this issue. See Rule 34(b)(4).

[*12] to the spouse who was the source of the income." Sec. 1.6015-3(d)(2), Income Tax Regs; see also Agudelo v. Commissioner, at *16.

In this case, while petitioner and Mrs. Hunter have been divorced since December 2012, petitioner was the source of the erroneous items that led to the deficiency and, thus, these items would be allocable to petitioner if he and Mrs. Hunter had filed separate returns at the time. As a result, section 6015(c) affords him no relief.

D.    Relief Under Section 6015(f)

Where relief is not available under section 6015(b) or (c), section 6015(f) grants the Commissioner the discretion to relieve a requesting spouse of joint liability, if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency or any portion thereof. Additionally, section 6015(f) authorizes granting such equitable relief "[u]nder procedures prescribed by the Secretary". For requests filed on or after September 16, 2013, and for requests pending in any Federal court on or after September 16, 2013, Rev. Proc. 2013-34, 2013-43 I.R.B. 397, prescribes the guidelines that the Commissioner will consider in determining whether equitable relief is appropriate. Although we are not bound by them, since this case was filed and pending after September 16, 2013, we will analyze

[*13] petitioner's request under these guidelines to ascertain whether he satisfies the requirements for relief under section 6015(f).  See Agudelo v. Commissioner, at *17-*18; Work v. Commissioner, at *22.

The revenue procedure begins by establishing threshold conditions that a requesting spouse must satisfy to be eligible for equitable relief.  The threshold conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent tax return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. These conditions, like the conditions under section 6015(b), are stated in the conjunctive; thus, a requesting spouse must satisfy all seven of them before relief may be granted.  Agudelo v. Commissioner, at *18.

Petitioner meets the first six threshold conditions but does not satisfy the seventh condition.  Generally, the income tax liability from which the requesting

[*14] spouse seeks relief must be attributable, either in full or in part, to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income unless a specified exception applies. See Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400. If the liability is partially attributable to the requesting spouse, then relief can be considered only for the portion of the liability attributable to the nonrequesting spouse. Id. As explained supra, the entire understatement at issue here is attributable to petitioner, not Mrs. Hunter.

Notwithstanding, the Commissioner may still consider granting equitable relief to a requesting spouse even where the tax liability is attributable in full or in part to an item of that spouse if any one of the following exceptions applies: (1) attribution due solely to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse. Id.

In this case, petitioner did not make any specific allegations that he meets any of these exceptions. In his petition and at trial petitioner stated that unbeknownst to him when they separated in late 2011, Mrs. Hunter withdrew all the money from their bank account, including presumably funds that represented all or some of the $43,657 in Social Security disability benefits he received. However, he did not claim that she was not entitled to the funds in the account or

[*15] that the funds were intended for the payment of tax. The misappropriation of funds exception applies only "[i]f the requesting spouse did not know, and had no reason to know, that funds intended for the <u>payment of tax</u> were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit, * * * to the extent that the funds intended for the <u>payment of tax</u> were taken by the nonrequesting spouse." <u>Id.</u> (emphasis added). There was no underpayment of tax here, but rather an understatement of tax as respondent determined through the deficiency procedures. Accordingly, the misappropriation of funds exception is inapplicable here, and petitioner, having failed to satisfy the threshold conditions, is not entitled to relief under section 6015(f).

## Conclusion

Petitioner is not entitled to relief under section 6015(b), (c), or (f) for 2011. Relief under section 6015 hinges on attributing the income tax liability which, in this case, as petitioner admits, is entirely attributable to him. Petitioner cannot be granted relief under section 6015 merely because his former spouse agreed to assume responsibility for the assessed deficiency. Any payment Mrs. Hunter makes with respect to the assessed deficiency will reduce what petitioner owes with respect to the assessed deficiency and vice versa. Nevertheless, he is jointly and severally liable for the entire assessed amount of the deficiency.

**[*16]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.